**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SERVICOM LLC, | : | Case No. 18-31722 (AMN) |
| JNET COMMUNICATIONS LLC, and | : | Case No. 18-31723 (AMN) |
| VITEL COMMUNICATIONS LLC, | : | Case No. 18-31724 (AMN) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |

**DEBTORS' APPLICATION, PURSUANT TO BANKRUPTCY CODE §§
327 AND 328 AND FED. R. BANKR. P. 2014 AND 2016, REQUESTING ENTRY
OF AN ORDER AUTHORIZING DEBTORS TO RETAIN
<u>ZEISLER & ZEISLER, P.C., AS COUNSEL FOR DEBTORS</u>**

ServiCom LLC ("ServiCom"), JNET Communications LLC ("JNET") and Vitel Communications LLC ("Vitel") (collectively, the "Debtors"), for their application (the "Application") pursuant to 11 U.S.C. §§ 327 and 328, Fed. R. Bankr. P. 2014 and 2016, and Local Bankr. R. 2014-1, to retain Zeisler & Zeisler, P.C. ("Z&Z") as their counsel, respectfully state the following:

**<u>JURISDICTION, VENUE AND BACKGROUND:</u>**

1. On October 19, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (such title, hereinafter, the "Bankruptcy Code"). Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtors continue to operate their businesses and manage their properties, affairs, and assets as debtors-in-possession. No trustee, examiner, or committee has been appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases").

2. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court for

these Chapter 11 Cases and this motion pursuant to 28 U.S.C. §§ 1408 and 1409, respectively. The basis for the relief requested herein is Bankruptcy Code § 327 Fed. R. Bankr. P. 2014.

3. JNET is a Delaware limited liability company that provides overall management and administrative functions as the holding company for ServiCom and Vitel. JNET, in conjunction with its subsidiaries, constitute a full service, outsource provider of customer contact management and telecommunication infrastructure fulfillment services to Fortune 1000 companies. JNET was founded in July 2003 by David Jefferson, a former senior executive of Comcast Corporation and AT&T Corporation. JNET has grown significantly since its founding. JNET realized on a consolidated basis $80 million in revenues in 2017 and is on track to generate revenues of $70 million in 2018 largely from its two separate but complementary subsidiaries, ServiCom and Vitel. As of the Petition Date, JNET independently employs approximately 31 people.

4. ServiCom is a Delaware limited liability company that is wholly owned by JNET. ServiCom provides a comprehensive suite of call center outsourcing services to a broad range of industries. The customer care and telemarketing capabilities include inbound calls, outbound calls, internet sales, customer service, customer retention, customer affairs, market research, help desk, lead management, interactive services, and fulfillment services. ServiCom primarily serves clients in the insurance, utility and telecom industries. ServiCom maintains its principal assets and operates a call center location in Milford, CT. ServiCom also operates call center locations in Machesney Park, IL and Sydney, NS (Canada). As of the Petition Date, ServiCom employs approximately 800 people.

5. Vitel is a Delaware limited liability company that is also wholly owned by JNET. Vitel provides installation and construction related services and other customer management

services to cable and telecom companies, including installation of cable and telephone equipment, high speed data and digital phone installation, multiple dwelling unit construction and customer save services. Vitel currently operates in Georgia, Maryland, New Jersey, Ohio and Texas. As of the Petition Date, Vitel employs approximately 25 people.

6. Unfortunately, the Debtors suffered significant losses in 2017 and 2018 year-to-date attributable to multiple factors.

7. First, ServiCom expanded its operations in anticipation of significant additional business. Specifically, early in 2016, ServiCom was awarded a significant inbound calling program. This required the addition of a third call center in Illinois which opened in September 2016. The new program and facility required a tremendous investment in equipment, infrastructure, and personnel. This expansion also took much more time than anticipated—and with delay came further costs. This work had the potential to be ServiCom's single most profitable program. Unfortunately, the call volume anticipated from the customer did not materialize at the rate they projected, resulting in negative cash flows.

8. Another customer decided in 2017 to discontinue its one type of inbound customer service work and replace it with another. This is not an issue in and of itself. However, the pull back of the former work happened at a much faster pace than the substitution of the new work. The significant drop in revenue experienced during the phase out produced cash flows insufficient to cover the cost of the call center dedicated to this work. Then, in 2018, the customer cancelled the second program altogether leaving ServiCom with a large idle investment.

9. As for Vitel, the overall shrinking of the residential cable industry significantly decreased revenue. In particular, starting in late 2017, one cable company reduced the amount of fulfillment work assigned to subcontractors like Vitel by 40%. This had a significant adverse

impact on cash flow. In response, Vitel took the necessary steps in 2018 to right size its operations in light of these changes only to see a further dip in revenue awarded. The 2018 construction work from new contracts was also delayed from Q2 to Q3, compounding the overall losses suffered.

10. JNET and its subsidiaries have responded to this contraction by closing a number of facilities and otherwise reducing the size of its business and operations which has resulted in a significant reduction in its overhead and personnel costs. Their overall enterprise and infrastructure are now consistent with the volume of work they currently have and reasonably anticipate having for the foreseeable future. Unfortunately, there exists significant unpaid expansion costs, liabilities arising from the subsequent downsizing of its operations, and other resulting financial challenges. These circumstances have also placed a tremendous burden on JNET's and its subsidiaries' working capital. Thus, JNET, ServiCom and Vitel seek bankruptcy relief under Chapter 11 so they can focus on their going forward business and return to profitability, and address their liabilities.

## **RELIEF REQUESTED:**

11. By this Application, pursuant to Bankruptcy Code §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014 and 2016, the Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order") authorizing and approving the employment of Z&Z to serve as the Debtors' counsel under a general retainer.

12. On the Petition Date, the Debtors entered into a Retention Agreement with Z&Z (the "Retention Agreement") concerning Z&Z's prospective representation of the Debtors in these Chapter 11 Cases.

13. The Debtors contemplate that Z&Z will render general legal services to the Debtors as needed throughout the course of the above-captioned Chapter 11 cases (collectively, the "Bankruptcy Cases"), including litigation and bankruptcy assistance and advice. Certain of the

legal services that Z&Z will render to the Debtors are summarized as follows:

    a.    Advising the Debtors of their rights, powers, and duties as debtors and as debtors-in-possession in continuing to operate and manage their businesses and properties;

    b.    Advising the Debtors concerning and assisting in the negotiation and documentation of financing agreements, debt restructuring, cash collateral orders, and related transactions;

    c.    Reviewing the nature and validity of liens asserted against the properties of the Debtors and the advising the Debtors concerning the enforceability of such liens;

    d.    Advising the Debtors concerning the actions that they might take to collect and to recover property for the benefit of the Debtors' estates;

    e.    Preparing on behalf of the Debtors certain necessary and appropriate applications, motions, pleadings, draft orders, notices, schedules, and other documents, and reviewing all financial and other reports to be filed in these Bankruptcy Cases;

    f.    Advising the Debtors concerning, and preparing responses to, applications, motions, pleadings, notices, and other papers which will be filed and served in these Bankruptcy Cases;

    g.    Counseling the Debtors in connection with the formulation, negotiation, and promulgation of a plan of reorganization and related documents; and

    h.    Performing all other legal services for and on behalf of the Debtors which will be necessary or appropriate in the administration of these Bankruptcy Cases.

14.    The Debtors submit that the employment of Z&Z is in their best interests and in the best interests of their estates and their creditors. The Debtors require knowledgeable counsel to render the above-described essential professional services in these Bankruptcy Cases. Z&Z has substantial

bankruptcy experience, is familiar with the business and financial affairs of the Debtors, and is well qualified to represent their interests in these cases.

15. Subject to the Court's approval, Z&Z will charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered. Z&Z will maintain detailed records of any actual and necessary or appropriate costs and expenses incurred in connection with the aforementioned legal services.

16. An affidavit (the "Kindseth Affidavit") executed by Stephen M. Kindseth, Esq. on behalf of Z&Z in accordance with the provisions of §§ 327, 328 and 329 of the Bankruptcy Code, Fed. R. Bankr. P. 2014 and 2016, and Local R. Bankr. P. 2014-1, is attached hereto as <u>Exhibit B</u> and is incorporated herein by reference. Pursuant to § 329 of the Bankruptcy Code and Fed. R. Bankr. P. 2016(b), a copy of Z&Z's Disclosure of Compensation for Attorneys for the Debtors is attached to the Kindseth Affidavit as <u>Exhibit 1</u>.

17. A copy of Z&Z's hourly billing rates presently in effect is attached to the Kindseth Affidavit as <u>Exhibit 2</u>. The hourly billing rate of Stephen M. Kinsdseth, Esq., who will be the primary attorney representing the Debtors, subject to the Court's approval of Z&Z's employment, is $450. The hourly billing rates of James Berman, Esq., and Eric A. Henzy, Esq., partners at Z&Z who will be the primary attorneys assisting Attorney Kindseth in representing the Debtors, subject to the Court's approval of Z&Z's employment, are $500 and $475, respectively. (*See* Exhibit B.) These hourly rates are subject to increase, which increases typically occur at the beginning of each calendar year.

18. The Debtors have provided Z&Z with a general retainer in the amount of $140,000.00 (less such amounts as are applied to fees and expenses incurred prior to the commencement of the bankruptcy cases which will be deducted from the $140,000 paid by the

Debtors to determine the actual retainer amount; upon such deduction, Z&Z will promptly file an Amended Disclosure of Compensation of Attorneys of Debtors disclosing the actual retainer amount) (the "Retainer"). Pursuant to the Retention Agreement, the Retainer paid to Z&Z constitutes an advanced payment earned upon receipt by Z&Z, which Z&Z has deposited in a separate escrow account in Z&Z's name. Further pursuant to the Retention Agreement, as well as the Bankruptcy Code and Local Bankr. R. 2014-1, no amounts from the Retainer may be disbursed with respect to professional services and expenses to be rendered after the Petition Date unless or until Z&Z's fees and expenses are allowed by the Bankruptcy Court. The Retention Agreement requires that any unused portion of the Retainer be refunded to CNI upon the termination of Z&Z's representation.

19. The complete provision of the Retention Agreement governing the Retainer is as follows:

> Under certain circumstances, such as those which present themselves in this case, we require that a retainer be paid before the filing of the bankruptcy petition. In the present case, we have asked that the Companies pay all invoiced fees and expenses before the Petition is filed with the Court plus a retainer in the amount of $140,000 (less such amounts as applied to fees and expenses incurred prior to the commencement of the bankruptcy cases) to be applied against any remaining current and any fees and disbursements incurred in the future, which would include the $1,717 filing fee.
>
> The retainer shall constitute an advanced payment "earned upon receipt" by the Firm. However, even though the Firm owns the retainer, the Firm will deposit the retainer in a separate escrow account in the name of the Firm and will not disburse to the Firm any portion of the retainer until the Firm's fees and expenses are allowed by the Bankruptcy Court pursuant to the United States Bankruptcy Code. Any unused portion of the retainer upon the termination of the Firm's representation—the amount remaining after the payment of the Firm's fees and expenses—shall be refunded promptly to the Companies.
>
> Any additional retainer amounts subsequently received by the Firm will be subject to the terms of this letter.

20. The Debtors have been fully informed concerning the nature of the Retainer, which is necessary and appropriate under the circumstances in these Chapter 11 Cases. The Connecticut

Rules of Professional Conduct permit this form of retainer.  *See* Conn. R. Professional Conduct 1.15(d) and Official Commentary to Conn. R. Professional Conduct 1.5.  State law governs the definition of property rights in the assets of a bankruptcy estate, including with respect to retainers.  *See In re Shihai*, 392 B.R. 62, 70-71 (Bankr. S.D.N.Y. 2008) (also discussing advance payment retainers and the approval thereof under New York state law).

21.    Z&Z has not shared or agreed to share compensation from the Debtor with any other person unless they are employees of Z&Z.  (*See id.*)

22.    To the best of the Debtors' knowledge, information, and belief: (a) Z&Z and its attorneys have no connection with the Debtors, their significant creditors, or any other party-in-interest, apart from Z&Z's representation of the Debtors prior to the Petition Date in connection with their contemplated Bankruptcy Cases; (b) Z&Z and its attorneys do not hold any interest adverse to the Debtors' estates for the matters for which Z&Z is to be employed; and (c) Z&Z and its attorneys are "disinterested persons" within the meaning of § 101(14) of the Bankruptcy Code, as required by § 327(a) of the Bankruptcy Code.  Accordingly, the Debtors believe that Z&Z is "disinterested" as such term is defined in § 101(14) of the Bankruptcy Code.

23.    Z&Z intends to apply to this Court for compensation for services rendered and reimbursement of expenses incurred post-petition in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Procedure.

24.    No previous application for the relief requested herein has been made in this case.

WHEREFORE, the Debtors request that the Court enter and order: (a) authorizing the Debtors to employ Zeisler & Zeisler, P.C. as their counsel in these Bankruptcy Cases under a general retainer as set forth in the Proposed Order; and (b) providing such other and further relief as the Court deems just and proper.

Dated at Bridgeport, Connecticut, this 19th day of October, 2018.

**JNET Communications LLC**

By: */s/ David Jefferson*　　　　　　　　　　　　　Date: 10/19/2018
　　　Name: David Jefferson
　　　Title:　Manager


**ServiCom LLC**

　By: JNET Communications LLC
　　　its Managing Member

　　By: */s/ David Jefferson*　　　　　　　　　　　　Date: 10/19/2018
　　　　Name: David Jefferson
　　　　Title:　Manager


**Vitel Communications LLC**

　By: JNET Communications LLC
　　　its Managing Member

　　By: */s/ David Jefferson*　　　　　　　　　　　　Date: 10/19/2018
　　　　Name: David Jefferson
　　　　Title:　Manager