# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SERVICOM LLC, | : | Case No. 18-31722 (AMN) |
| JNET COMMUNICATIONS LLC, and | : | Case No. 18-31723 (AMN) |
| VITEL COMMUNICATIONS LLC, | : | Case No. 18-31724 (AMN) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |

## AFFIDAVIT OF ATTORNEY

I, Stephen M. Kindseth, being duly sworn, hereby depose and say:

1. I am a partner of the law firm of Zeisler & Zeisler, P.C. ("Z&Z") and am duly admitted to practice in the State of Connecticut and in the United States District Court for the District of Connecticut.

2. I provide this Affidavit in connection with the Application of ServiCom LLC ("ServiCom"), JNET Communications LLC ("JNET") and Vitel Communications LLC ("Vitel") (collectively, the "Debtors"), pursuant to 11 U.S.C. §§ 327 and 328, Fed. R. Bankr. P. 2014 and 2016, and Local Bankr. R. 2014-1, to retain Z&Z as their counsel with respect to the above-captioned chapter 11 cases (the "Chapter 11 Cases").

3. Z&Z maintains an office for the practice of law at 10 Middle Street, 15th Floor, Bridgeport, Connecticut 06604.

4. To the best of my knowledge, information, and belief, (a) Z&Z and its attorneys have no connection with the Debtors, their significant creditors, any other party-in-interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, apart from Z&Z's representation of the Debtors prior to the Petition Date in connection with their contemplated Chapter 11 Cases; (b) Z&Z and its attorneys

do not hold any interest adverse to the Debtors' estates for the matters for which Z&Z is to be employed; and (c) Z&Z and its attorneys are "disinterested persons" within the meaning of § 101(14) of Title 11 of the United States Code (such title, hereinafter, the "Bankruptcy Code"), as required by § 327(a) of the Bankruptcy Code.

5. Pursuant to § 329 of the Bankruptcy Code, Fed. R. Bankr. P. 2016(b), and Local Bankr. R. 2014-1, a copy of Z&Z's Disclosure of Compensation for Attorneys for the Debtors is attached hereto as <u>Exhibit 1</u>.

6. A copy of Z&Z's hourly billing rates presently in effect is attached hereto as <u>Exhibit 2</u>. These hourly rates are subject to increase, which increases typically occur at the beginning of each calendar year.

7. On the Petition Date, the Debtors entered into a Retention Agreement with Z&Z (the "Retention Agreement") concerning Z&Z's prospective representation of the Debtors in the Chapter 11 Cases. The Debtors have provided Z&Z with a retainer in the amount of $140,000 (the "Retainer").

8. Pursuant to the Retention Agreement, the Retainer paid to Z&Z constitutes an advanced payment earned upon receipt by Z&Z, which Z&Z has deposited in a separate escrow account in Z&Z's name. Further pursuant to the Retention Agreement, as well as the Bankruptcy Code and Local Bankr. R. 2014-1, no amounts from the Retainer may be disbursed with respect to professional services and expenses to be rendered after the Petition Date unless or until Z&Z's fees and expenses are allowed by the Bankruptcy Court. The Retention Agreement requires that any unused portion of the Retainer be refunded to CNI upon the termination of Z&Z's representation.

9. The complete provision of the Retention Agreement governing the Retainer is as follows:

> Under certain circumstances, such as those which present themselves in this case, we require that a retainer be paid before the filing of the bankruptcy petition. In the present case, we have asked that the Companies pay all invoiced fees and expenses before the Petition is filed with the Court plus a retainer in the amount of $140,000 (less such amounts as applied to fees and expenses incurred prior to the commencement of the bankruptcy cases) to be applied against any remaining current and any fees and disbursements incurred in the future, which would include the $1,717 filing fee.
>
> The retainer shall constitute an advanced payment "earned upon receipt" by the Firm. However, even though the Firm owns the retainer, the Firm will deposit the retainer in a separate escrow account in the name of the Firm and will not disburse to the Firm any portion of the retainer until the Firm's fees and expenses are allowed by the Bankruptcy Court pursuant to the United States Bankruptcy Code. Any unused portion of the retainer upon the termination of the Firm's representation—the amount remaining after the payment of the Firm's fees and expenses—shall be refunded promptly to the Companies.
>
> Any additional retainer amounts subsequently received by the Firm will be subject to the terms of this letter.

10. The Debtors have been fully informed concerning the nature of the Retainer, which is necessary and appropriate under the circumstances in these Chapter 11 Cases.

11. Z&Z has not shared or agreed to share compensation from the Debtors with any other person unless they are employees of Z&Z.

I declare upon penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated at Bridgeport, Connecticut, this 19th day of October, 2018.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth

# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SERVICOM LLC, | : | Case No. 18-31722 (AMN) |
| JNET COMMUNICATIONS LLC, and | : | Case No. 18-31723 (AMN) |
| VITEL COMMUNICATIONS LLC, | : | Case No. 18-31724 (AMN) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |

## DISCLOSURE OF COMPENSATION OF ATTORNEYS FOR DEBTORS

1.  Pursuant to 11 U.S.C. §329(a) and Fed. R. Bankr. P. 2016(b), I certify that I am an attorney with Zeisler & Zeisler, P.C. (the "Firm"), proposed counsel for the Debtors in the above-captioned Chapter 11 cases (collectively, the "Bankruptcy Cases"), and compensation paid to the Firm for services rendered or to be rendered on behalf of the Debtors in connection with these Bankruptcy Cases is as follows:

The Firm has agreed to accept as a retainer:                                              $140,000.00.[1]

As of the Petition Date, the Firm had a pre-petition retainer balance of:    $140,000.00.[2]
Balance Due of retainer:                                                                              $0.00

2.  The source of compensation paid to the Firm was:

    __x__ Debtors            ____ Other (specify)

3.  The source of compensation to be paid to the Firm is:

    __x__ Debtors            ____ Other (specify)

4.  __x__ The Firm has not agreed to share compensation from the Debtors with any persons unless they are employees of the Firm.

5.  The Firm and I have agreed to render bankruptcy legal services to the Debtors on the terms and conditions set forth in the Retention Agreement appended hereto, and as further set forth in the Debtors' application for this Court's order approving the Debtors' employment of the Firm.

6.  Fees will be billed at the Firm's normal hourly rates and reimbursement of

---

[1] Less the amount of fees and expenses incurred by the Firm through the filing of the bankruptcy case, which will be deducted from the $140,000 paid by the Debtors to determine the actual retainer amount; upon such deduction, the Firm will file an Amended Disclosure of Compensation of Attorneys of Debtors disclosing the actual retainer amount.
[2] Same as footnote 1.

expenses will be sought, subject to Court approval, and the Debtors have agreed to pay all such allowed fees and expenses to the extent approved and the above-noted retainer is exceeded.

## **CERTIFICATION**

As of the date hereof, I certify that the foregoing is a complete statement of any agreement or agreement for payment to me and the Firm for the representation of the Debtors in these Chapter 11 cases.

Dated: October 19, 2018 at Bridgeport, Connecticut.

|  |  |
|---|---|
| By: | */s/ Stephen M. Kindseth* |
|  | James Berman (Federal Bar No. ct06027) |
|  | Stephen M. Kindseth (Federal Bar No. ct14640) |
|  | Patrick R. Linsey (Federal Bar No. ct29437) |
|  | ZEISLER & ZEISLER, P.C. |
|  | 10 Middle Street, 15th Floor |
|  | Bridgeport, CT  06605 |
|  | Tel. 203-368-4234 |
|  | Fax 203-367-9678 |
|  | Email:  skindseth@zeislaw.com |
|  |         jberman@zeislaw.com |
|  |         plinsey@zeislaw.com |
|  | Their Attorneys |



ZEISLER & ZEISLER, P.C.
Attorneys at Law

10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Phone: (203) 368-4234
www.zeislaw.com

October 19, 2018

ServiCom LLC
JNET Communications LLC
Vitel Communications LLC
Attn: David Jefferson, CEO
155 Hill Street
Milford, CT 06460
(email: David.jefferson@jnet-llc.com)

Re:   Retention Agreement (Servicom LLC, JNET Communications LLC and Vitel Communications LLC/Chapter 11)

Dear Mr. Jefferson:

We are pleased that ServiCom LLC, JNET Communications LLC and Vitel Communications LLC (the "Companies") has requested that Zeisler & Zeisler, P. C. provide it with representation. The Bar recommends that there be a written retention agreement between attorneys and their clients. Additionally, we feel that it is in the best interest of our clients that they be fully informed of our billing practices. The purpose of this letter, therefore, is to set forth the scope of our engagement as legal counsel to the Companies, to set forth the financial arrangements regarding our engagement, and to verify our agreement of the foregoing.

1.   Scope of Engagement

Zeisler & Zeisler, P. C. (the "Firm") will perform those legal services that the Companies have requested that it perform. Specifically, we have been engaged to represent you in a Chapter 11 bankruptcy case upon the terms and conditions set forth herein. We are not representing any of your officers, directors, or shareholders individually. Any bankruptcy filing will require written authorization from the Board of Directors of the Companies, or otherwise as we determine to be legally necessary.

2.   Fees and Hourly Rates

Our billing practice is to charge for our services based on the hourly rate of the attorney involved. Fees are calculated based upon the amount of time devoted to a matter by an attorney at that attorney's hourly rate. These hourly rates are based upon experience, expertise, and standing. Our current rates for attorneys range from $300.00 per hour for our associates to



Page 2

$500.00 per hour for our most senior partners. In addition, we try to use associate, paralegal, and secretarial support on projects whenever possible. Our bills are reviewed carefully before they are finalized and appropriate adjustments made when necessary. My billing rate is $500 per hour. The hourly rate for my paralegal is $190 per hour. All hourly rates are reviewed from time to time and may be adjusted and/or increased without notice. It is typical that some of our hourly rates are increased annually at the beginning of each calendar year. You will be advised before any new rate go into effect.

3.    Disbursements

The performance of legal services involves costs and expenses, some of which must be paid to third parties. These expenses include, but are not limited to, filing fees, court reporters, deposition fees, travel costs, telecopier costs, messenger services, long distance telephone charges, computerized research expenses, and expenses of experts whom we deem appropriate to assist in our representation of the Companies. The long-distance charges reflect our actual costs, copying charges represent our estimated actual costs of $.20 per page, and postage is charged at cost. We expect that the Companies will either pay directly or reimburse us for such costs. If such costs can be calculated beforehand and appear to be substantial, we may ask the Companies to advance us those sums before we expend them or to reimburse the vendor directly.

4.    Periodic Statements and Payment Terms

Our practice is to send monthly statements for services rendered and disbursements incurred on our client's behalf during the previous period. The detail and the statement will inform the Companies not only of the fees and disbursements incurred, but also of the nature and progress of the work performed. These statements are due and payable upon receipt, but in any event, no later than thirty (30) days thereafter.

We do our best to see that our clients are satisfied not only with our services, but also with the reasonableness of the fees and disbursements charged for these services. Therefore, if the Companies have any questions about, or objections to, a statement or the basis for our fees it, the Companies should raise it promptly for discussion. If you object only to a portion of the statement, we ask you to pay the remainder, which will not constitute a waiver of any objection.

5.    Retainer

Under certain circumstances, such as those which present themselves in this case, we require that a retainer be paid before the filing of the bankruptcy petition. In the present case, we have asked that the Companies pay all invoiced fees and expenses before the Petition is filed with the Court plus a retainer in the amount of $140,000 (less such amounts as applied to fees and expenses incurred prior to the commencement of the bankruptcy cases) to be applied against any remaining current and any fees and disbursements incurred in the future, which would include the $1,717 filing fee.



Page 3

The retainer shall constitute an advanced payment "earned upon receipt" by the Firm. However, even though the Firm owns the retainer, the Firm will deposit the retainer in a separate escrow account in the name of the Firm and will not disburse to the Firm any portion of the retainer until the Firm's fees and expenses are allowed by the Bankruptcy Court pursuant to the United States Bankruptcy Code. Any unused portion of the retainer upon the termination of the Firm's representation—the amount remaining after the payment of the Firm's fees and expenses—shall be refunded promptly to the Companies.

Any additional retainer amounts subsequently received by the Firm will be subject to the terms of this letter.

7.  Withdrawal from Representation

The attorney-client relationship is one of mutual trust and confidence. If you or the Companies have any questions at all about the provisions of this fee agreement, I invite inquiries. We encourage our clients to inquire about any matter relating to our fee arrangement or monthly statements that are in any way unclear or appear unsatisfactory. Any failure on the Companies' part to meet its obligations of timely payment under this Agreement will constitute authorization for the Firm to withdraw from this representation and to reveal this Agreement and any other necessary documents to any court or agency, if the same should prove necessary to effect withdrawal or collection of our fees. Conversely, this Agreement is also subject to termination by either party upon reasonable notice for any reason. Upon such termination, the Companies would remain liable for any unpaid fees and costs, absent legitimate objection thereto.

8.  Future Services

This Agreement will also apply to services rendered for such future matters that the Companies and the Firm jointly agree will be handled by the Firm. If, however, such services are substantially different from those to which this Agreement applies (for instance, an appearance on the Companies' behalf in Court), either party may request that a new Agreement be executed, or that this Agreement be re-acknowledged.

If this retention agreement correctly sets forth your understanding, and that of the Companies, of the scope of the services to be rendered to it by the Firm, and if the terms of the engagement are satisfactory, please execute the enclosed copy of this retention agreement and return it to us. If the scope of the services described is incorrect, or if the terms of the engagement set forth in this retention agreement are not satisfactory to the Companies, please let us know in writing so that we can discuss either aspect.



Page 4

By executing this Agreement, you and the Companies acknowledge that there is uncertainty concerning the outcome of this matter, and that the Firm and the undersigned attorney have made no guarantees as to the disposition of any phase of this matter. I look forward to continuing to work with you and thank you once again for the opportunity to serve.

Very truly yours,

ZEISLER & ZEISLER, P. C.

*[signature]*

Stephen M. Kindseth, Esq.

READ, ACKNOWLEDGED AND AGREED TO:

**JNET Communications LLC**

By: _[signature]_    Date: 10/19/18
Name: David Jefferson
Title:  Manager

**ServiCom LLC**

By: JNET Communications LLC
    its Managing Member

    By: _[signature]_    Date: 10/19/18
    Name: David Jefferson
    Title:  Manager

**Vitel Communications LLC**

By: JNET Communications LLC
    its Managing Member

    By: _[signature]_    Date: 10/19/18
    Name: David Jefferson
    Title:  Manager

EXHIBIT 2

**Zeisler & Zeisler PC**
**BILLING RATES**

*Rates effective April 9, 2018*

|  | April-18 |
|---|---|
| Beatman, Matthew | 450 |
| Berman, James | 500 |
| Blau, Christopher | 275 |
| Cesaroni, John | 325 |
| Henzy, Eric | 475 |
| Horwitt, Jed | 495 |
| Hurlie-Dunn, Coleen | 395 |
| Kindseth, Stephen | 450 |
| Kornafel, Joanna | 300 |
| Linsey, Patrick | 350 |
| Miller, Christine | 375 |
| Miron, James | 400 |
| Moriarty, James | 420 |
| O'Brien, Barbara | 190 |
| Paralegal Services | 190 |
| Romney, Aaron | 425 |
| Secretarial Overtime | 85 |
| Vaughan, Rion | 300 |

*Rev. 4/27/18*