## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SERVICOM LLC, | : | Case No. 18-31722 (AMN) |
| JNET COMMUNICATIONS LLC, | : | Case No. 18-31723(AMN) |
| VITEL COMMUNICATIONS LLC, and | : | Case No. 18-31724 (AMN) |
| SERVICOM CANADA LIMITED, | : | Case No. 18-31734 (AMN) |
| | : | Jointly Administered Under |
| Debtors. | : | Case No. 18-31722 (AMN) |
| SERVICOM LLC, | : | |
| JNET COMMUNICATIONS LLC, and | : | |
| VITEL COMMUNICATIONS LLC | : | |
| | : | |
| Movants, | : | |
| | : | |
| v. | : | |
| | : | |
| CORAL CAPITAL SOLUTIONS LLC, | : | |
| CT CORPORATION SYSTEM, AS | : | |
| REPRESENTATIVE, VFI KR SPE I, LLC, | : | |
| GROWTHFUNDING EQUIPMENT FINANCE, | : | |
| And EVERLASTING CAPITAL CORP., | : | |
| | : | |
| Respondents. | : | |
| | : | |

## FOURTH INTERIM ORDER (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION AND (III) APPROVING SALE OF ACCOUNTS RECEIVABLE

Upon the Motion for Interim and Final Orders (I) Authorizing The Debtors To Use Cash

Collateral, (II) Granting Adequate Protection and (III) Approving Sale of Accounts Receivable

(ECF No. 9, the "Motion"), filed by ServiCom LLC ("ServiCom"), JNET Communications LLC

("JNET"), and Vitel Communications ("Vitel," together with ServiCom and JNET, the "Debtors"),

seeking, among other things, entry of this interim order (the "Fourth Interim Order") authorizing

the Debtors to use cash collateral in accordance with the budget annexed hereto as **Exhibit A** (the

"Budget"), granting adequate protection and approving the sale of the Debtors' accounts receivable

upon the terms and conditions set forth in that certain Factoring Agreement between the above

Debtors and Coral Capital Solutions, LLC dated as of October 17, 2011, except as otherwise

provided in this Order; and

The Debtors having requested in the Motion that (a) pending the Final Hearing (as defined

herein) on the Motion, a hearing be scheduled on an expedited basis (the "First Interim Hearing")

to consider entry of an interim order, (b) that a final hearing (the "Final Hearing") be scheduled on

the Motion to consider entry of a final order (the "Final Order") authorizing and approving, on a

final basis, the Debtors' use of Cash Collateral (as defined below) and sale of receivables as

described below, and (c) notice procedures be established in respect of the Final Hearing; and

Pursuant to the First Interim Hearing held on October 24, 2018, the Court having entered

its Amended Interim Order (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate

Protection and (III) Approving Sale of Accounts Receivable on October 25, 2018, and said Order

having scheduled a second interim hearing for November 7, 2018 at 11:30 a.m. (the "Second

Interim Hearing"); and

Pursuant to the Second Interim Hearing held on November 7, 2018, the Court having

entered its Second Interim Order (I) Authorizing Debtors to Use Cash Collateral, (II) Granting

Adequate Protection and (III) Approving Sale of Accounts Receivable on November 8, 2018, and

said Order having scheduled a final hearing for November 28, 2018 at 2:00 p.m., and the Debtors

having then requested the entry of a third interim order at the hearing held on November 28, 2018,

at 2:00 p.m. (the "Third Interim Hearing") instead of a Final Order; and

Pursuant to the Third Interim Hearing held on November 28th, 29th and 30th, 2018, the Court

having entered its Third Interim Order (I) Authorizing Debtors to Use Cash Collateral, (II)

Granting Adequate Protection and (III) Approving Sale of Accounts Receivable on November 8,

2018, and said Order having scheduled a final hearing for December 5, 2018 at 12:00 p.m., which hearing was re-scheduled for December 6, 2018 at 8:45 a.m., and the Debtors having then requested the entry of a fourth interim order at the hearing held on December 6, 2018, at 8:45 a.m. (the "Fourth Interim Hearing") instead of a Final Order; and

Notice of the Fourth Interim Hearing having been given to (i) those creditors claiming a security interest in the Debtors' Cash Collateral; (ii) Coral Capital; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) all parties that have appeared in these Cases and requested notice; and (v) the Office of the United States Trustee (collectively, the "Notice Parties"); and it appearing that on the record made in the Cases (as defined below) and after considering the Debtors' immediate need for use of Cash Collateral and to sell the Receivables (as defined below), no other or further notice need be given; and Coral Capital having consented to the Debtors' use of Cash Collateral and agreed to purchase Receivables in accordance with this Fourth Interim Order;

NOW, THEREFORE, upon the Motion and the record of the Fourth Interim Hearing held before the Court on December 6, 2018 and a continued hearing on December 12, 2018; after due deliberation and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:  _____

A.     Filing.  On October 19, 2018, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, thereby commencing the above-captioned Chapter 11 cases (collectively, the "Cases").  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors have thereafter remained in possession of their assets and operated as Debtors in possession.  Contemporaneously with filing the Motion, the Debtors filed motions with the above-captioned Bankruptcy Court (the "Court") seeking certain first day relief to permit Debtors to continue in operation as going concerns.

B. Jurisdiction.  The Court's consideration of the Motion and this Fourth Interim Order

is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). The statutory predicates for the relief sought herein are Sections 361, 362 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4001 and 6004.

C.    Representations and Findings. Subject to the reservation of rights set forth in paragraph 1 and the Challenging Action set forth in paragraph 10 below, based on the representations in the Motion, and the entire record at the First, Second and Third Interim Hearings, as well as the Fourth Interim Hearing, there being no objection or all such objections being overruled, withdrawn, or resolved, and the Court being otherwise duly advised, the Court hereby makes the following findings of fact:

a.    Factoring Agreement. Coral Capital and the Debtors are parties to that certain "Factoring Agreement" dated as of October 17, 2011 (the "Factoring Agreement")[1] and appended hereto as **Exhibit B**. In summary, the Factoring Agreement provides as follows:

(i)    Each of the Debtors agreed to sell and assign to Coral Capital, and Coral Capital agreed to purchase from each of the Debtors, certain accounts arising from such Debtor's sale of goods or rendition of services to such Debtor's customers located in the United States and Canada (collectively, the "Receivables") which Receivables include, but are not limited to Approved and Unbilled Receivables (as defined in the Factoring Agreement), subject to all terms and conditions contained in the Factoring Agreement.

(ii)    From time to time, the Debtors may submit to Coral Capital a written request that it purchase the Receivable listed therein, and in response thereto, Coral

---

[1] The Factoring Agreement has been amended many times to primarily modify advance rates and Factoring Fees (as defined therein). This Order only approves the Factoring Agreement appended to the Motion, without amendments, except as modified herein, and shall govern the factoring relationship between the parties thereto.

Capital may provide the Debtors a schedule of Receivables that it elects to purchase.

(iii)    The "Purchase Price" for such "Approved Receivables" shall be the "Net Amount" (all as defined therein), payable in two installments.  The first, the "Advance," is paid on the business day immediately following the approval date in an amount equal, generally to up to 85% of the "Net Amount" of such approved Receivables.  The second payment is paid by Coral Capital to the Debtors three business days after the day on which payment of the approved Receivables is received by Coral Capital and equals to the payment received less (a) any reserves, (b) advances, and (c) any and all fees authorized under the Factoring Agreement.

(iv)    In order to secure the payment and performance of the "Obligations" (as defined in the Factoring Agreement), Section 6.1 of the Factoring Agreement contains a grant by Debtors to Coral Capital of a continuing security interest in and right of setoff with respect to, and assigned to Coral Capital, all right, title and interest in and to essentially all of such Debtor's now existing and future personal property, including the following: accounts (including the Receivables), chattel paper (including electronic chattel paper), general intangibles (including all payment intangibles and all other rights to payment), instruments, inventory, equipment, documents and investment property, including, without limitation, any claims for tax refunds from any governmental authority due or to become due, all proceeds of letters of credit, all tort claims, all insurance proceeds, all trademarks and tradenames, all books and records, all deposit accounts, all computer programs, software, licenses and permits, whether now or hereafter existing or now owned or

5

hereafter acquired and wherever located and all proceeds of the foregoing (collectively, the "Prepetition Collateral").

(v)    The term "Obligations" is defined to include all loans, advances, indebtedness, liabilities, obligations, debit balances, covenants and duties owing by a Debtor or any of the Debtor's subsidiaries or affiliates (whether arising thereunder or any "Other Agreement" (as defined therein)) to Coral Capital or Coral Capital's parent, subsidiary or affiliate of every kind and description (whether now or hereafter existing and whether arising under the Factoring Agreement, under any Other Agreement or otherwise), direct or indirect, absolute or contingent, due or to become due, including, without limitation, any indebtedness, liabilities or obligations owing by a Debtor to others which Coral Capital has acquired by assignment, participation or otherwise, and further including, without limitation, all interest, fees, charges, expenses, indemnification obligations and attorneys' fees for which a Debtor or any other person may be obligated under the Factoring Agreement or any Other Agreement.

b.    Security Interest.  Coral Capital perfected its security interest in the Prepetition Collateral by recording UCC-1 financing statements with the offices of the Delaware Secretary of State (collectively, and as amended and/or continued from time to time the "Financing Statements").  The Financing Statements confer upon Coral Capital a first-priority security interest in the Prepetition Collateral.  The Prepetition Collateral, therefore, includes all of the Debtors' "cash collateral" as that term is defined by Bankruptcy Code § 363(a) (the "Cash Collateral").

c.      Secured Term Note.  Separate and distinct from the Factoring Agreement, Debtors made, executed and delivered to Coral Capital that certain "Secured Term Note" dated November 21, 2017, in the original principal amount of $750,000; as such Secured Term Note amended and modified by that certain Amendment No. 1 to Secured Term Note, increasing the principal balance of the loan to $1,000,000; and as such Secured Term Note was further amended and modified by that certain Amendment No. 2 to Secured Term Note inter alia, extending the term of the Secured Term Note; and as such Secured Term Note was further amended and modified by that certain Amendment No. 3, inter alia, increasing the principal balance to $1,400,000 and extending the term of the Secured Term Note  (collectively, the "Secured Term Note").  The Secured Term Note now evidences a term loan by Coral Capital to the Debtors in the original principal amount of $1,400,000 (the "Secured Term Loan").  In order to secure the payment and performance of the Secured Term Note, Section 5.2 of the Secured Term Note provides that the Obligations thereunder shall be secured by the "Collateral" (defined herein as the "Prepetition Collateral") and pledges pursuant to the Factoring Agreement (all Coral Capital pre-petition liens and security interests, the "Prepetition Liens").

d.      Prepetition Coral Capital Obligations. As of the Petition Date, the Debtors were liable to Coral Capital: (a) under the Factoring Agreement, the  outstanding balance due as of the Petition Date for Approved Receivables of $6,526,639.34 and Unbilled Receivables of $1,645,198.64; (b) under the Secured Term Note, the principal amount of $1,400,000, plus accrued and unpaid interest thereon; and (c) all other fees, costs and additional charges due under the Factoring Agreement and the Secured Term Note, as the case may be (clauses (a), (b) and (c) herein are hereinafter referred to collectively as the "Prepetition Coral Capital Obligations").

7

e.     <u>Debtors' Affirmations and Acknowledgments</u>.  The Debtors further acknowledge, agree and affirm that they have no claim, counterclaim, setoff, defense, or objection to any of the Obligations under the Factoring Agreement or the Secured Term Note which has an existing principal balance of $1,400,000 with accrued interest as of the Petition Date in the amount of $8,732.71.  Further, the Debtors acknowledge, agree, and irrevocably affirm that the Factoring Agreement, is, and always has been from its inception, an agreement constituting a true sale of the Receivables and the purchase of the Receivables by Coral Capital are not loans to the Debtors. Further, the Debtors are not aware of any facts that would support, nor are they aware of any claims, causes of actions or equitable remedies against or defenses to or abatement of the Obligations under the Factoring Agreement or the Secured Term Note, whether arising in law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to Section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

D.     <u>Necessity for and Limitations on Use of Cash Collateral</u>.  The Debtors have an immediate need to obtain authorization to use cash collateral and to sell Receivables.  The availability to the Debtors of sufficient working capital, liquidity and other financial accommodations is vital to their ability to continue their operations so that they may pursue and effectuate a plan of reorganization.  The Debtors require use of their cash (which is generated primarily from operations), including all Cash Collateral, and the ability to sell Receivables to carry on the operation of their businesses and to administer and preserve the value of their assets, including the Prepetition Collateral.  The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral and the sale of the Receivables.

E.      The preservation and maintenance of the Debtors' businesses and their assets is necessary to maximize returns for all creditors and effectuate a plan of reorganization with respect to their remaining assets.  Absent the Debtors' ability to use Cash Collateral and to sell Receivables in accordance with the terms hereof, the continued operation of their businesses would not be possible, and serious and irreparable harm to the Debtors, and their estates and creditors would occur.

F.      The Debtors' use of the Cash Collateral and sale of Receivables under the terms set forth herein is in the best interests of the Debtors, their creditors and their estates, and proposed pursuant to the Debtors' sound business judgment.

G.      Coral Capital is entitled, pursuant to sections 361, 362 and 363 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, for and to the extent of any diminution in value of the Prepetition Collateral, resulting from the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral and post-petition sale of Receivables under the Factoring Agreement (other than the Cash Collateral) and the imposition of the automatic stay.

H.      Notice. The Motion and the Third Interim Order scheduling the Fourth Interim Hearing was served by the Debtors on the Notice Parties. The notice provided of the Motion and the Third Interim Hearing is sufficient and adequate notice and no further notice of the relief sought at the Fourth Interim Hearing is necessary or required.

I.      Record. The record adequately demonstrates the need for the Court to have conducted the Fourth Interim Hearing on the notice provided because of the potential for immediate and irreparable harm to the Debtors, their assets, businesses and estates.  Based on the

record, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004, notice of the Fourth Interim Hearing was adequate as set forth herein and on the record.

Based upon the foregoing, the Court makes the following conclusions of law and, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.     <u>Motion Granted</u>.  The Motion is granted as to the Debtors' request for relief with respect to the use of cash collateral and the sale of Receivables to the extent provided herein.  Any objections to the relief sought in the Motion with respect to the entry of this Final Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. Provided, however, and notwithstanding anything set forth in this Fourth Interim Order or the previously entered First, Second and Third Interim Orders to the contrary, the rights of parties-in-interest shall be fully preserved, protected and not released or waived with respect to any future cash collateral order or cash collateral period after December 15, 2018; and the protections afforded Coral Capital and Other Lien Holders set forth in this Fourth Interim Order, or the previously entered First, Second and Third Interim Orders are fully enforceable and not subject to modification for the term of such orders.

2.     <u>Authorization</u>.  Subject to the terms and conditions of this Fourth Interim Order (i) pursuant to Section 363(c)(2), the Debtors may use their cash, including any Cash Collateral, for the period through and including December 15, 2018, in accordance with the Budget appended hereto as **<u>Exhibit A</u>**, provided, however, only with the express advance written consent of Coral Capital, may any budgeted line item amount be increased, provided not more than ten percent (10%) per line item on a weekly basis, and, (ii) pursuant to Section 363(b), the Debtors are authorized to sell their Receivables, and Coral Capital may purchase the Debtors' Receivables in accordance with the Factoring Agreement appended hereto as **<u>Exhibit B</u>**, commencing from the Petition Date through and including December 15, 2018, (the "Termination Date") unless terminated earlier as provided in the Factoring Agreement or default by Debtors of any provision of this Order, provided **<u>Exhibit B</u>** is modified as follows: (i) the definition of "Applicable

Percentage" means, in respect of any Approved Receivable that is not an Unbilled Receivable, up to eighty-five (85%) percent and for all Unbilled Receivables, up to seventy-five (75%) percent; provided that the foregoing is contingent upon the aggregate amount of charge backs, returns, allowances, discounts and other adjustments with respect to Approved Receivables purchased on any Receivables Schedule being less than 1% of the gross face amount of such Approved Receivables; (ii) the term of the Factoring Agreement shall begin as of the date in which Purchaser had purchased the first Approved Receivables and shall continue until the earlier of (a) the date of a Final Hearing at which the Court shall consider entry of the Final Order with respect to the Motion, or (b) termination by Coral Capital in its sole discretion as provided in the Factoring Agreement;  and (iii) all notices to be delivered to Coral Capital shall be sent to Coral Capital Solutions, LLC, 275 Madison Avenue, Suite 2014, New York, New York, 10016 with copies to Craig I. Lifland, Esq., Halloran & Sage, LLP, 225 Asylum Street, Hartford, CT 06103 and Harlan Lazarus, Esq., Lazarus & Lazarus, P.C., 240 Madison Avenue, 8th Floor, New York, New York 10016.

    3.    <u>Adequate Protection</u>. Pursuant and subject to sections 361, 362, 363, 503 and 507 of the Bankruptcy Code, as adequate protection for any diminution in value of the Prepetition Collateral resulting from the use of Cash Collateral and the Carve-Out (if any and as defined below), including the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and further in exchange for the Debtors' continuing sale and Coral Capital's continuing purchase of Receivables on the terms and conditions set forth in the Factoring Agreement as modified herein:

    a.    To Coral Capital—

    (1)    To secure the Debtor's "Obligations" including those incurred during the pre and post-petition Factoring Agreement and Secured Term Loan, and to the extent of any diminution in value of the Prepetition Collateral resulting from any use of Cash Collateral,

the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, Coral Capital is hereby granted valid, binding, enforceable and perfected first priority senior replacement liens on and security interests in (the "Adequate Protection Liens") all property and assets of any kind and nature in which any of the Debtors have an interest, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, investment property, letters of credit rights, vehicles, goods, accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, intellectual property (including trademarks and trade names), licenses, causes of action, rights to payment, including tax refund claims, insurance proceeds and tort claims, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing together with the Prepetition Collateral, the "Postpetition Collateral"); provided, however, that the Postpetition Collateral shall not include any claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar state law ("Avoidance Actions"), or any proceeds thereof. The Adequate Protection Liens shall have the following priorities:

(A)     First Priority on Unencumbered Property.  Subject to the Carve Out, a valid, binding, continuing, enforceable, fully perfected, non-voidable first priority lien on, and security interest in, all Postpetition Collateral of the type and kind that constitutes Coral Capital's Prepetition Collateral, in addition to all Postpetition Collateral that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date.

(B)   <u>Liens Junior to Certain Existing Liens</u>.  Subject to the Carve-Out, a valid, binding, continuing, enforceable, fully perfected non-voidable junior lien on, and security interest in, all Postpetition Collateral, that is subject to (x) valid, perfected and unavoidable senior liens in existence immediately prior to the Petition Date, if any, or (y) valid and unavoidable senior liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, if any, which prepetition security interests and liens in favor of Coral Capital is junior to such valid, perfected and unavoidable liens.

(C)   <u>Liens Senior to Certain Other Liens</u>.  The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and its estate under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made <u>pari</u> <u>passu</u> with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(3)   <u>Superpriority Claims</u>.   To the extent of any diminution in value of the Prepetition Collateral in which the Debtors have an interest resulting from any use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, the Obligations incurred under the post-petition Factoring Agreement, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, Coral Capital is hereby granted allowed superpriority claims senior to all other administrative expense claims (including those under Chapter 7), and to all other claims, including administrative claims, arising under sections 105, 326,

328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except as set forth below in the immediately succeeding section (the "Superpriority Claims"), which Superpriority Claims is to be payable from, and have recourse to, all of the Postpetition Collateral and proceeds thereof; provided, however, that such Superpriority Claims are subject to the Carve-Out (as defined below).

(4)     The Adequate Protection Liens and Superpriority Claims shall be, in each case, (i) senior and prior, and prime, the Prepetition Liens and the Prepetition Coral Capital Obligations, but junior and subject only to (x) the Carve-Out and (y) all other valid, enforceable, perfected and unavoidable liens on all of the Debtors' assets and property in existence as of the Petition Date, or duly perfected thereafter, under section 546(b) of the Bankruptcy Code, which under applicable law would take priority over the Prepetition Liens, and (ii) effective as of the date of the entry of this Fourth Interim Order without any further action by the Debtors or Coral Capital and without the necessity of the execution, filing or recordation of any financing statements, security agreements, lien applications or other documents.

(5)     Carve Out.   Notwithstanding any provision of the Factoring Agreement, the Secured Term Note, this Fourth Interim Order, or any other agreement, the Prepetition Liens, Adequate Protection Liens and Superpriority Claim (each as defined herein) and the liens and interests held by the Other Lien Holders (as defined below) shall be subject and subordinate in all respects to a carve-out for the following costs, fees and expenses (collectively, the "Carve-Out"): (i) the unpaid fees due and payable to the Clerk of the

14

Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; and (ii) the unpaid fees, costs and expenses incurred by (a) Zeisler & Zeisler, P.C., Debtor's counsel, up to a maximum of $25,000, and (b) retained by any official committee pursuant to Bankruptcy Code § 327 or 1103 up to a maximum of $20,000, and only to the extent the fees, costs, and expenses of such professionals are allowed by the Court, provided, however, (a) the Carve-Out shall be subordinate to the Receivables purchased pre-petition under the Factoring Agreement, and (b) that neither Coral Capital's Cash Collateral nor the Carve-Out may be used, either directly or indirectly, for any services or expenses arising from or relating to the the initiation or prosecution of any action: (i) contesting the validity, priority or extent of the prepetition or postpetition claims or liens asserted by Coral Capital, (ii) any services or expenses including investigation seeking to recharacterize and/or challenge the relationship of the Debtors and Coral Capital under the Factoring Agreement, (iii) asserting claims or causes of action of any sort whatsoever (including, without limitation, avoidance claims) against Coral Capital or any person or entity affiliated with Coral Capital, (iv) preventing, hindering or delaying Coral Capital from enforcing any of its rights or remedies under the Factoring Agreement or realizing upon the Collateral and Adequate Protection Liens; or (iv) seeking to modify any of the rights of Coral Capital provided for in this Third Interim Order.

(6)     As further adequate protection, the Debtors shall pay monthly contract rate interest on the Secured Term Loan in the amount of $14,268.50.  To the extent the Court finds at a future date that Coral Capital is not entitled to interest on the Secured Term Loan then such monthly payments shall be reapplied to other obligations under the Secured Term Loan.

15

(7)  <u>Reporting.</u>  The reports required by the Factoring Agreement and daily cash position of each Debtor.  Subject to the entry of a confidentiality agreement, the Debtors shall provide the same reporting to VFI KR SPE I, LLC.

b.  <u>To the Other Lien Holders.</u>  CT Corporation, as representative, VFI KR SPE I, LLC, Growthfunding Equipment Finance, Everlasting Capital Corp. and World Global Capital, LLC d/b/a Everlasting Capital (together, the "Other Lien Holders") may assert interests in some portion of the Cash Collateral.  To the extent that any of the Other Lien Holders hold an interest in the Cash Collateral, as adequate protection for the Debtors' use of Cash Collateral pursuant to this Fourth Interim Order, each such Other Lien Holder is hereby granted subordinate to Coral Capital and subject to the Carve-Out (a) a replacement lien on all of the Prepetition Collateral and the Postpetition Collateral and (b) a Superpriority Claim; provided, however, that such replacement liens and Superpriority Claims are to be only for the amount of any diminution in value  (if any) of such Other Lien Holder's interest (if any) in the Cash Collateral and that such replacement liens or Superpriority Claim are to be only to the same validity, priority and extent of any pre-petition interest in the Cash Collateral held by such Other Lien Holder.  The Other Lien Holders shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the replacement liens granted herein.

4.  Pursuant to Bankruptcy Code § 363(f), the Debtors' sale of Receivables to Coral Capital in accordance with the Factoring Agreement shall be free and clear of all claims, liens and interests in such Receivables.

5.  Pursuant to Bankruptcy Code §363(m), the Court finds the Sale of Receivables to Coral Capital to be in good faith and is therefore entitled to the protections under Section 363(m).

Furthermore, notwithstanding the rights otherwise afforded in paragraph 10 below, as to 5 Star Communications, LLC, Advanced Cable Contractors, Inc., Service Tech Communications, Inc., Southern Network Communications, LLC and Timberhouse Transportation and Equipment, LLC (the "Vitel Installers") only, this Court finds that Coral Capital is a bonafide purchaser for value, and, therefore, the Vitel Installers hold no claims against Coral Capital for constructive trust or otherwise.

6.      The fourteen-day stay under Bankruptcy Rule 6004(h) shall not apply and the Debtors shall be permitted to sell Receivables to Coral Capital as provided in this Order immediately upon the Court's entry hereof.

7.      <u>Limitation on Use of Cash Collateral</u>.  No proceeds of the Carve-Out, the Prepetition Collateral, the Postpetition Collateral or the Cash Collateral shall be used by Debtors for the purpose of: (a) objecting to, challenging or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority or enforceability of the Prepetition Coral Capital Loan Obligations or the Prepetition Liens (but not including any investigation related thereto which shall be subject to the limitations set forth below), or any other rights or interests of Coral Capital, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against Coral Capital or Coral Capital, including, without limitation, for Coral Capital liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, 551, 552 or 553 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise including seeking to modify or otherwise recharacterize the relationship of the Debtors and Coral Capital under the Factoring Agreement; (b) seeking to modify any of the rights granted to Coral Capital hereunder; or (c) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court and are permitted pursuant to the Budget.

8.      <u>Amendments</u>.  Coral Capital and the Debtors may amend, modify, supplement or waive any provision of the Factoring Agreement and if such amendment, modification, supplement or waiver is not material (in the good faith judgment of Coral Capital and the Debtors), without any need to apply to, or receive further approval from, the Court.  Any material amendment, modification, supplement or waiver shall be in writing, signed by the parties and subject to approval by the Court on appropriate notice.

9.      <u>Binding Effect of Order; Successors and Assigns.</u>  The Factoring Agreement and this Fourth Interim Order shall be binding upon all parties-in-interests in the Case, including without limitation, the Respondents, and the Debtors and their respective successors and assigns, including, without limitation, any chapter 11 trustee or chapter 7 trustee or similar responsible person hereafter appointed as a representative of the Debtors' estates and any such successors or assigns, without further order of this Court and shall inure to the benefit of Coral Capital and the Debtors and their respective successors and assigns.  The Debtors and their successors and assigns shall be deemed authorized and directed to comply with the provisions of this Fourth Interim Order and the Factoring Agreement.  Coral Capital shall not have any obligation to purchase any Receivables to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estates of the Debtors, including the Debtors, such purchase being subject to Coral Capital's rights as provided in the Factoring Agreement.

10.     <u>Challenges in Respect of Factoring Agreement, Obligations and Secured Term Note.</u>  The Debtors agreed to waive the right to challenge the validity, enforceability, perfection and priority of the Obligations and Coral Capital's security interest and liens on all of the Debtors' Assets.  Each other party, including any committee or trustee appointed in these Cases, shall have waived any right to (i) challenge the validity, enforceability, perfection and priority of the

Obligations to Coral Capital including the Secured Term Note, (ii) the recharacterization, challenge, or subordination of the Factoring Agreement, (iii) challenges, set aside, or avoid the purchase of Receivables prior to or after the Petition Date, and (iv) Coral Capital's security interest and liens on the Debtor's assets; unless that party commenced in the Court an adversary proceeding seeking a challenge under Sections (i) – (iv) herein (a "Challenging Action"), on or before (a) for all parties in interest other than the Official Committee of Unsecured Creditors and the Vitel Installers, December 24, 2018, and (b) for the Official Committee of Unsecured Creditors and the Vitel Installers, on or before January 4, 2019 (collectively, the "Challenge Deadline").  The Obligations and the priority of Coral Capital's security interest and liens on all assets of the Debtors, and all rights under the Factoring Agreement and Secured Term Note, shall be deemed, as against any party in interest that does not file a Challenging Action on or before the Challenging Deadline, to be legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination, recharacterization and otherwise unavoidable.  If no Challenging Action is commenced on or before the Challenge Deadline or, in the event one or more Challenging Actions is commenced on or before the Challenge Deadline and such Challenging Actions are dismissed, the Obligations and Coral Capital's security interest and liens on the Debtors' assets, and the Factoring Agreement, shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates or otherwise, including without limitation, any successor thereto.

11.    <u>Limitation on Additional Liens</u>. Without the written consent of Coral Capital, the Debtors shall not be permitted to grant any new liens (including, without limitation, liens with a priority to or pari passu with the Prepetition Liens, the Adequate Protection Liens, or any other liens granted to Coral Capital under this Fourth Interim Order) or to provide any party with an

administrative expense claim having a priority over or being pari passu with the Superpriority Claims.

12.      <u>Stay, Vacation, Reversal, etc</u>.  Any stay, vacation, reversal or modification of this Fourth Interim Order or any provision hereof shall not affect the Adequate Protection Liens or the Superpriority Claims, or the validity of any obligations to, or rights of, Coral Capital or Coral Capital incurred or granted pursuant to this Fourth Interim Order with respect to the use of Cash Collateral, any other Prepetition Collateral, and Obligations incurred post-petition under the Factoring Agreement, prior to such stay, vacation, reversal or modification.  Notwithstanding any such stay, vacation, reversal or modification, all uses of Cash Collateral and obligations incurred and rights granted pursuant hereto prior to the effective date of such stay, vacation, reversal or modification shall be governed in all respects by the original provisions hereof and Coral Capital shall be entitled to all the rights, privileges, benefits and remedies, including, without limitation, the security interests and priorities, granted herein with respect to such obligations and use of Cash Collateral.  No waiver, modification, or amendment of any of the provisions of this Fourth Interim Order shall be effective as between the parties unless it is set forth in writing, signed by the Debtors and Coral Capital, and approved by the Court.

13.      Upon the occurrence of an Event of Default under this Order or the Factoring Agreement, including any unauthorized deviation from the Budget annexed hereto, including disbursements and generation of accounts receivable sales and five (5) business Days written notice to Debtors and Debtors' counsel thereof, the Debtors' consensual rights to use Cash Collateral pursuant to the Budget shall terminate <u>provided</u>, <u>however</u>, any rights of the Debtors to seek the non-consensual use of Cash Collateral exclusive of any Reserves provided for in the Factoring Agreement will be reserved.  Termination of the use of the Prepetition Collateral, including Cash Collateral, pursuant to the Budget, as authorized in this paragraph 8, shall not impair the continuing effectiveness and enforceability of any other provisions in this Fourth Interim Order.  Notwithstanding the parties' rights regarding the use or prohibition of use of cash collateral, Coral Capital's purchase of Receivables is discretionary and can be terminated anytime.

14.     <u>Perfection of Security Interests</u>. Coral Capital is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or take other action in order to validate and perfect the liens and security interests granted to it hereunder.  Whether Coral Capital shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of the Fourth Interim Order.  A certified copy of the Fourth Interim Order and/or Final Order may, in the discretion of Coral Capital, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Fourth Interim Order and/or Final Order for filing and recording.

15.     <u>Limitation on Charging Expenses Against Collateral</u>. Subject to and effective upon entry of this Fourth Interim Order, no expenses of administration (whether incurred during the Chapter 11 Case or any subsequent Chapter 7 case) incurred for the preservation or protection of the Prepetition Collateral or the Postpetition Collateral incurred while the Debtors are authorized to use such collateral under this Order shall be charged against or recovered from the Prepetition Collateral or the Postpetition Collateral pursuant to Bankruptcy Code section 506(c) or any similar principal of law or equity without the express prior written consent of Coral Capital.

16.     <u>No Release of Non-Debtors</u>. Nothing contained in this Fourth Interim Order shall be deemed to terminate, modify or release any obligations of any non-Debtor third party liable to Coral Capital with respect to any Prepetition Coral Capital Loan Obligations or post-petition Obligations under the Factoring Agreement or otherwise.

17.     <u>No Third-Party Beneficiaries</u>.  No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except with respect to the Carve-Out and as otherwise specifically provided herein.

18.    <u>Retention of Jurisdiction</u>.  The Court shall retain exclusive jurisdiction over the subject matter of this Fourth Interim Order in order to resolve any dispute in connection with the rights and duties specified hereunder.

19.    <u>Headings</u>.  Headings have been inserted in this Fourth Interim Order as a matter of convenience for reference only and it is agreed that such headings are not a part of this Fourth Interim Order and shall not be used in interpreting any provision of this Final Order.

20.    <u>Further Assurances</u>.    The Debtors and Coral Capital shall execute all further documents and perform such further acts as may reasonably be required to effectuate the purpose and intent of this Fourth Interim Order.

21.    <u>Notice of Final Hearing; Objections</u>. The Debtors shall, on or before 4 p.m. (prevailing Eastern Time) on December 14, 2018, transmit copies of a notice of the entry of this Fourth Interim Order, together with a copy of the proposed Final Order, to (i) those creditors claiming a security interest in the Debtors' Cash Collateral; (ii) Coral Capital; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) all parties that have appeared in these Cases and requested notice; and (v) the Office of the United States Trustee.  The notice of entry of this Fourth Interim Order shall state the date of the Final Hearing, and that any party in interest objecting to the entry of the Final Order shall file written objections with the Clerk of the United States Bankruptcy Court for the District of Connecticut no later than 4:00 p.m. (prevailing Eastern Time) on December 18, 2018, and shall serve such objections so that the same are received on or before such date by: (a) Zeisler & Zeisler, P.C., 10 Middle Street, 15th Floor, Bridgeport , CT 06604 Attn: James Berman, Esq. and Stephen M. Kindseth, Esq., counsel for the Debtors; (b) the Office of the United States Trustee for Region 2, 150 Court Street, New Haven, CT 06510 (c) Craig Lifland, Esq. Halloran & Sage, LLP, 225 Asylum Street, Hartford, CT 06103, counsel for Coral Capital, and (d) Jeffrey Sklarz, Esq., Green & Sklarz LLC, 700 State Street, Suite 100, New Haven, CT 06511, counsel to the Official Committee of Unsecured Creditors

22.    <u>Continued Interim Cash Collateral Hearing</u>. The continued interim cash collateral hearing  will be held on December 19, 2018, at 11:00 a.m.

Dated this 14th day of December, 2018, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut

# **EXHIBIT A**

**DAILY CASH BUDGET**
**JNET/Servicom/Vitel Consolidated**
**12/07/18 to 12/14/18**

| Task | FRIDAY 12/7/2018 | MONDAY 12/10/2018 | TUESDAY 12/11/2018 | WEDNESDAY 12/12/2018 | THURSDAY 12/13/2018 | FRIDAY 12/14/2018 |
|---|---|---|---|---|---|---|
| *Close out financials for year-end tax return* | | | | | | |
| *Finalize Invoicing* | | | | | | |
| Doris Hon | | | | | 4 | |
| Pam Dimitro | | | | | 6 | |
| | | | | | | |
| *Finalize Invoicing* | | | | | | |
| Fred Perrin (Sirius XM, AT&T) | | | | | 6 | |
| Todd Riley (GM, AT&T, Sirius XM) | | | | | 3 | |
| Dan Kobylanski (IT Data Management for Clients | | | | | 4 | |
| Robert Woiccak (IT Reporting for Clients) | | | | | 2 | |
| Amy Galvin (AMC, AT&T,) | | | | | 3 | |
| Melissa Winberg (All) | | | | | 1 | |
| Kimberly Williams (All) | | | | | 3 | |
| Shauna Graham (Sirius XM) | | | | | 2 | |
| Angela Bruce (GM) | | | | | 1 | |
| Anthony Boudreau(AT&T) | | | | | 2 | |
| Brent Jones (Altice/AT&T) | | | | | 5 | |
| Robert Massey (Altice) | | | | | 4 | |
| Scott Johnson (AT&T) | | | | | 4 | |
| Jennifer Jones (AT&T & Altice) | | | | | 2 | |
| | | | | | | |
| *Provide support for pending division sales* | | | | | | |
| Lisa Ogden | | | | | 6 | |
| | | | | | | |
| *Notify Key Vendors of Shut-down* | | | | | | |
| Gene Caldwell | | | | | - | |
| | | | | | | |
| *Notify Clients of Shut-down* | | | | | | |
| David Jefferson | | | | | - | |
| | | | | | | |
| *Provide Employee Assistance* | | | | | | |
| Erin Otto | | | | | 4 | |
| Tanya Wilneff | | | | | 2 | |
| Flora MacDonald | | | | | 2 | |
| | | | | | | |
| *Facility Shut-down* | | | | | | |
| Sandy Shurmack (IT) | | | | | 2 | |
| Josh Vartabedian (IT) | | | | | 1 | |
| Leo Murphy (IT) | | | | | 2 | |
| Rob Bethell (IT) | | | | | 1 | |
| | | | | | | |
| *Operational Costs* | | | | 5 | | |
| Utilities | | | | | | 5 |
| Canadian Legal Counsel | | | | | | 10 |
| Data Center Rent | | | | | | |
| | | | | | | |
| *Future Cost to Address* | | | | | | |
| Shred personnel documents and other sensitive documents | | | | | | |
| Arrange for removal, sale, or donation of fixed assets | | | | | | |
| Arrange for preparation of year-end tax returns | | | | | | |
| Arrange for year-end preparation of W-2s and T-4s | | | | | | |
| Arrange for removal, sale, or donation of IT equipment | | | | | | |
| Return keys to landlords and close out locations | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Payroll Funding** | | | | | | |
| Servicom Canada Payroll | | | | | | |
| JNET Payroll | | | | | | |
| Servicom US Payroll | | | | | | |
| Vitel Payroll | | | | | | |
| **Net Cash Outflows** | - | - | - | 5 | 72 | 15 |
| | | | | | | |
| **Beginning Cash Balance** | 60 | | | | | |
| **Coral Funding for Invoice activity** | | | | | 52 | |
| | | | | - | | |
| **Net Cash Inflows** | 60 | - | - | - | 52 | - |
| **ENDING DAILY CASH BALANCE** | 60 | 60 | 60 | 55 | 35 | 20 |