**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br><br>SERVICOM LLC, *et al.*<br><br>Debtors. | Case No.: 18-31722 (AMN)<br>Case No.: 18-31723 (AMN)<br>Case No.: 18-31724 (AMN)<br>**(Jointly Administered) under**<br>**Case No. 18-31722 (AMN)** |
| VFI KR SPE I, LLC,<br><br>Plaintiff<br><br>v.<br><br>DAVID JEFFERSON; EUGENE CALDWELL; and CORAL CAPITAL SOLUTIONS LLC,<br><br>Defendants. | Adv. Proc. No.: 19-03005 |
| BARBARA KATZ, CHAPTER 7 TRUSTEE<br><br>Plaintiff<br><br>v.<br><br>DAVID JEFFERSON; EUGENE CALDWELL; and CORAL CAPITAL SOLUTIONS LLC,<br><br>Defendants. | Adv. Proc. No.: 19-03006<br><br>April 22, 2022 |

## MOTION TO MODIFY PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26 and D. Conn. L. Civ. R. 7, Rev. Dr. David Jefferson and Mr. Eugene Caldwell (the "Defendants"), hereby move to further modify the protective order (and/or modify the Modified Protective Order), which protective order was first modified by the Modified Protective Order entered by the court on November 19, 2021 in the main Chapter 7 case no. 18-31722 ("Main Case") and in each of the above-referenced Adversary Proceedings. See, ECF Nos. 1157 (Protective Order) and 1256 (Modified Protective Order) in the Main Case,

3585012

ECF No. 355 (Protective Order) and 409 (Modified Protective Order) in AP 3005, and ECF Nos. 289 (Protective Order), 343 (Modified Protective Order) in AP 3006 (collectively, and as first modified, the "Protective Order").   Largely through bank subpoenas *duces tecum*, bank representative testimony, and bank officer declaration, the Defendants' counsel has learned the complete pathway of the Side Collateral (the $1.4 Million that was respectively pledged by the Defendants, in which the Defendants granted Coral Capital Solutions, LLC ("Coral") a first lien and security interest as collateral for their guaranty of the loan made by Coral to JNET Communications LLC ("JNET")).  This complete pathway so learned ***includes the last whereabouts*** of the Side Collateral (which pathway and last whereabouts are referred to herein as the "Side Collateral Revelations").  Each and all of the documents produced in response to those bank subpoenas have been designated by Coral as "Confidential-Attorneys' Eyes Only," which, in turn, means that all bank representative testimony concerning those documents automatically receives the same designation under the Protective Order. See, Protective Order, at p. 9, ¶ 13.  Coral, likewise, has designated a declaration made by a representative of First Republic Bank as "Confidential-Attorneys' Eyes Only."  Other information that composes a part of the Side Collateral Revelations has been designated by Coral as "confidential."

The designation of all of the foregoing as "Confidential-Attorneys' Eyes Only" (or any confidentiality designation, for that matter) ***makes not only*** the documents themselves and testimony relating to these documents "Designated Materials" under the Protective Order, it also requires the ***factual essence*** contained in the Designated Materials to be treated with the ***same degree*** of confidentiality and restriction on use as the ***verbatim*** text of the Designated Material. This is made evident by the fact that ***excerpts from*** designated material also constitute designated material.  See page 5 of Protective Order.  Also, the order restricts disclosure of "the confidential

information contained" in the Designated Material, to the *same extent* as the original medium containing the information.  *Id*. at 8.  It is highly doubtful that the court's use of the phrase "excerpts from documents," (Protective Order at p. 5) was meant to include only the **verbatim text**, and not also the *factual essence* of the information contained in the Designated Materials.  Thus, the *most basic facts* about the Side Collateral Revelations are, by operation of the Protective Order, restricted information.  This means that (a) there can be no public filing disclosing the most basic facts about the Side Collateral Revelations; and (b) the Side Collateral Revelations, including the most basic facts with respect thereto, can be used only in "*this litigation*."  Protective Order at pp. 10 (¶ 13), 6 (¶ 5).

The foregoing creates a problem for the Defendants because they have *rights of redress* – that is to say, claims and causes of action – against Coral arising out of the Side Collateral Revelations, but it is *questionable* whether this court has *subject matter jurisdiction* over those claims and causes of action.  While the claims and causes of action should be brought in this court and made a part of the Adversary Proceedings (or consolidated with them) *if* there is subject matter jurisdiction over them – in order to avoid potential issues of "claim splitting" and *res judicata* – this court's subject matter jurisdiction *rests only with* and as to claims arising under Title 11, claims arising in a case under Title 11, and proceedings related to a case under Title 11.  See 28 U.S.C. §157.

The claims and causes of action that the Defendants have against Coral arising out of the Side Collateral Revelations include tort law claims (which are state law in origin), such as tortious interference and fraud.  Essentially, the Defendants aver that Coral is, and has been, engaged in a pattern of conduct to *wrongfully and improperly diminish and/or eviscerate* the Defendants' equitable and statutory subrogation rights.

Statutory subrogation rights, per Second Circuit authority, are rights conferred on their holder by the Bankruptcy Code. *In re Chateaugay Corp.*, 89 F.3d 942, 947-49 (2d Cir. 1996). 11 U.S.C. § 509

> is the statutory enactment of the long-standing doctrine of equitable subrogation…. Although the Bankruptcy Code and not the law of equity governs the dispute before us, it is nonetheless familiar law that where congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.

*Id*. Therefore, there is an argument to be made that the commission of a tort that would have the necessary effect of impairing, diminishing or eviscerating bankruptcy law-conferred subrogation rights are either "core" or "related to" proceedings. See, *Hill v. Banks*, 2005 WL 2877727 (N.D. Miss. 2005) ("A proceeding is a ***core*** proceeding if it ***involves a substantive right provided by Title 11***, or if the proceeding could only arise in the context of a bankruptcy case," citing *In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999)). However, the case law concerning subject matter jurisdiction in bankruptcy is not so clear as to whether a suit by guarantors against a secured creditor alleging tortious conduct by the creditor that attempts to wrongfully impair, diminish or eviscerate the guarantor's statutory right of subrogation would be within the subject matter jurisdiction of the bankruptcy court. This is because the ***focus*** of cases evaluating jurisdiction is the ***effect*** that the case could have on the ***bankruptcy estate or its administration*** (***not the harm*** that a secured creditor may, through tortious conduct, ***cause a guarantor***). See, e.g., *ICICI Bank Ltd.. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 246 (S.D.N.Y. 2017) (explaining "related to" jurisdiction; *TD Bank, N.A. v. Sewall*, 419 B.R. 103, 105-06 (D. Me. 2009) (same); *Meritage Homes Corp. v. JP Morgan Chase Bank, N.A.*, 474 B.R. 526, 56 (Bankr. S.D. Ohio 2012) (same). Therefore, it is important for the Defendants to be able to commence litigation (such as state law tort claims) arising out of the Side Collateral Revelations in a court where

there necessarily is subject matter jurisdiction – New York state court – where state law tort claims can be heard (and where Coral has its principal place of business, such that there also will be in *personam* jurisdiction over Coral). In order to commence such litigation, the Defendants **need to plead the most basic facts** of the Side Collateral Revelations in a ***court other than*** this honorable court, and which filing should be a public filing. In order to be able to commence such litigation, the Protective Order needs to be modified.

The Defendants will be filing a motion for expedited consideration of this motion because there is a potential statute of limitations issue. Although the Defendants believe that there are good grounds for the application of the equitable estoppel/tolling doctrine and/or the fraudulent concealment doctrine to avoid any statute of limitations defense (see, e.g., *F.W. Sims, Inc. v. Simonelli*, 71 Misc.3d 1219, 144 N.Y.S.3d 558 (2021) (fraudulent concealment doctrine) and *Burrowes v. Combs*, 25 A.D.3d 370 (2006) (equitable estoppel/tolling doctrine)), the three-year anniversary of Coral's amended proof of claim filing (April 29, 2022) is ***arguably*** a date ***within which*** the Defendants could commence an action against Coral in New York state court and not need to utilize the equitable tolling doctrine and/or the fraudulent concealment doctrine. In order to do that, the ***most basic facts*** of the Side Collateral Revelations, which is composed of the ***factual essence (or distillation)*** of the documents and testimony that have been designated as "Confidential-Attorneys' Eyes Only" need to be removed from the operation of the Protective Order. Equitable tolling and fraudulent concealment would arise out of such things as the repeated commission of perjury by at least one representative of Coral – in depositions in May of 2019 and September of 2021. That deposition testimony ***directly conflicts*** with the Side Collateral Revelations. Other representations made by Coral in these bankruptcy proceedings

(upon which representations Coral seeks an adjudication or favorable determination) directly conflict with the Side Collateral Revelations.

How can this basic factual information about the Side Collateral Revelations possibly fall within the definitions of what properly may be designated "Confidential" or "Confidential-Attorneys' Eyes Only"?  Coral is to designate as confidential only information that "reasonably and in good faith it believes contains or comprises (a) trade secrets, (b) proprietary business information, or (c) information implicating an individual's legitimate expectation of privacy."  Protective Order at 5 of 13.  Likewise, Coral is to designate as "confidential-attorney's eyes only," confidential information that Coral "reasonably and in good faith believes is so highly sensitive that its disclosure to a competitor could result in significant competitive or commercial disadvantage [to Coral]."  *Id*.  There is no way that the complete pathway of the Side Collateral, including the last whereabouts of the Side Collateral, can be a trade secret, proprietary business information, or information implicating a legitimate expectation of privacy, *particularly when* the Defendants are seeking to *use only* the factual essence (distillation) of the same *and to not use* the actual names of persons in setting forth the factual essence.

On March 24, 2022, the Defendants' counsel submitted to Coral's counsel a statement of what compose the most basic facts of the Side Collateral Revelations – *even proposing* to not use actual names when identifying a person,[1] in order to not have their respective names in a pleading, and to instead use a *non-identifying convention that differentiates* between persons. The Defendants' counsel requested that these most basic facts be *removed from the operation of the Protective Order*, as they cannot possibly truly fall within the definitions by which the information may properly qualify as being either "confidential" or "confidential-attorneys' eyes

---

[1] The term "person" includes an individual or entity.

only." One week later, Coral's counsel asked the Defendants' counsel to provide them with each of the documents that contain the "Confidential-Attorneys' Eyes Only" (or other confidentiality designation) from which the statement of basic facts was derived (so that they could put the request in "context"). Defendants' counsel did so that same day – on March 31, 2022. It took Coral's counsel nearly three weeks to respond. In Coral's counsel's response, they contended that the Protective Order does not require them to agree to de-designate or refuse to de-designate materials. Instead, Coral's counsel contended that the undersigned needs to evaluate the information that he wants to disclose under the requirements of the Protective Order and govern his conduct accordingly. Respectfully, the Side Collateral Revelations fall within the scope of the Protective Order because they set forth the factual essence (a distillation) of the complete path of the Side Collateral and the last whereabouts thereof, and such is *information that is contained in* documents that Coral has designated as either confidential or Confidential-Attorneys' Eyes Only. The factual essence/distillation of the information in the Designated Materials is not mere attorney work product (as Coral's response contends).

Lastly, it should be noted that the Defendants' counsel is currently examining the record under the applicable law relating to fraud on the court,[2] although that can be addressed without modifying the Protective Order. Prevailing on these tort claims likely would require the Defendants to also obtain a favorable adjudication that the approximately $1.1 Million so-called "Early Termination Fee," is not recoverable by Coral, whether on one of the grounds presently pleaded in the Adversary Proceedings, or due to the inequitable and fraudulent conduct of Coral

---

[2] The "Fraud on the Court" doctrine is well-articulated in *Passlogix, Inc. v. 2FA Technology, LLC*, 708 F.Supp.2d 378 (S.D.N.Y. 2010).

in connection with the Side Collateral Revelations, or perhaps as a sanction against Coral if the court were to determine that Coral's actions establish a fraud on the court.

The Defendants are in the process of preparing a motion to be filed under seal that will provide the court with the details and the *specific* basic material facts that compose the Side Collateral Revelations that the Defendants seek to have removed from the operation of the Protective Order (which basic material facts are composed of the yellow highlighted language set forth in the Word document sent to Coral's counsel on March 24th – which will be part of the materials filed under seal).

The undersigned hereby certifies that the parties, through email communications, have conferred in good faith to resolve this dispute and have been unable to do so. There is, instead, a fundamental disagreement as to whether the factual essence (or distillation) of Designated Material itself constitutes Designated Material within the meaning of the Protective Order.

**WHEREFORE**, the Defendants' move the court to modify the Protective Order, removing therefrom the most basic facts of the Side Collateral Revelations so that they may be pleaded in a public filing *and* not be restricted to use in this litigation (such that litigation can be commenced against, *inter alia*, Coral relating thereto in another forum where there

unquestionably is subject matter jurisdiction).

Dated: April 22, 2022, at Hartford, Connecticut.

          **Respectfully submitted,**

          **DEFENDANTS DAVID JEFFERSON AND EUGENE CALDWELL**

          By: */s/ Paul Gilmore*
          *Paul Gilmore*
          UPDIKE, KELLY & SPELLACY, P.C.
          Goodwin Square
          225 Asylum Street, 20th Floor
          Hartford, CT 06103
          P:860.548.2641
          pgilmore@uks.com
          Their attorney