**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br><br>SERVICOM, LLC, JNET COMMUNICATIONS, LLC, VITEL COMMUNICATIONS, LLC,<br><br>*Debtors* | Chapter 7<br>Case No. 18-31722 (AMN)<br>Case No. 18-31723 (AMN)<br>Case No. 18-31724 (AMN)<br>(Jointly Administered Under<br>Case No. 18-31722 (AMN))[1]<br><br>RE: ECF Nos.[2] 1941, 1967, 1976, 1977, 1978, 1979, 1980, 1981, 1982, 1983 |

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING MOTIONS IN LIMINE REGARDING EVIDENCE**
**PROFFERED BY CORAL CAPITAL SOLUTIONS LLC**

In advance of an evidentiary hearing to partially determine the amount of Coral Capital Solutions LLC's ("Coral") allowed pre-petition and post-petition claims in these cases, Chapter 7 Trustee Barbara H. Katz (the "Trustee"), VFI KR SPE I, LLC ("VFI"), and interested parties Rev. Dr. David Jefferson and Mr. Eugene Caldwell ("J&C") (collectively, the "Movants") filed motions in limine seeking orders precluding testimony by Coral's "preferred member" Ryan Freedman. ECF Nos. 1967, 1976, 1982 (the "Motions").

Familiarity with the pending proceedings amongst these parties in the Chapter 7 case (Case No. 18-31722) and in adversary proceeding cases 19-3005 and 19-3006 is assumed. The Court had planned an evidentiary hearing to commence in December 2024, focused on determining the amount of Coral's pre-petition and post-petition claims.

---

[1] These estates are jointly administered but not substantively consolidated.

[2] A citation to a document filed on the docket of the underlying Chapter 7 case, case number 18-31722, are noted by "ECF No." referencing the document number on the docket of the Chapter 7 case. A citation to a document filed on the docket of an adversary proceeding case is noted by the case number followed by "AP-ECF No." referencing the document number on the docket of the adversary proceeding case.

The Court held numerous status conferences with the parties during the Fall of 2024, during which the parties were able to narrow their disagreements as to the calculation of Coral's claims, although significant disputes as to Coral's entitlement to the claims remains.

Because the proffered testimony by Mr. Freedman would not be probative to the questions before the Court the Motions will be granted, and Mr. Freedman's testimony is precluded at this time.

## **Background**

This dispute stems from Proof of Claim 79-3 filed by Coral ("POC 79-3"), and from Coral's most recent statement of its pre-petition and post-petition claims which asserts Coral is owed $3,152,850.86.  POC 79-3; ECF Nos. 1015, 1940.  Movants each objected to Coral's claim under various legal theories.  A commonality among these theories relates to Coral's "use" of $1,400,000 delivered to Coral by J&C pursuant to a Secured Term Note (the "Side Collateral"). [3]  Although the Movants disagree about the specific legal impact this "use" has, each of the Movants agrees, and Coral concedes, by December 24, 2018, Coral possessed and controlled no more than $82,181.42 of the Side Collateral.  ECF Nos. 1967 at 4; 2019 at 13, 16.

This Memorandum of Decision is one of many relating to the Movants' and Coral's disputes and is intended to resolve the Motions in Limine, only. Although the Court engages in an ancillary analysis of various legal concepts relating to the "use" of the Side

---

[3] POC 79-3 Exhibit B is entitled "Secured Term Note." Although the parties dispute the document is in fact a secured term note and that the funds held by Coral pursuant to that document are collateral, there is no dispute the document is a contract and that its terms bind the parties with respect to the $1,400,000 in funds delivered to Coral.

Collateral, the only determination being made in this decision is that Mr. Freedman's testimony is unnecessary, and therefore the Motions may be granted.

## Discussion

### *"Use," "Commingling," and "Application" Under U.C.C. § 9-207(b)(3)*

Relying on New York Uniform Commercial Code 9-207(b), Coral argues it is permitted to commingle funds held as collateral and asserts it did not, "use any particular dollar as opposed to another." Case No. 19-03006, AP-ECF No. 579, p. 9. According to Coral, "[e]ach dollar in Coral's possession or to which it has access is equivalent to (*i.e.* fungible) each other dollar in Coral's possession or to which it has access. … Coral's general operation of its business using funds from its accounts and/or credit lines is not evidence that a specific dollar of Side Collateral was "used" for any specific purpose." Case No. 19-03006, AP-ECF No. 579 at 9. Coral also argues, "the use of Side Collateral in and of itself is not the same as application of collateral – such a reading would render UCC 9-207(b)(4) a nullity. … [T]he Side Collateral was commingled (a right granted by the UCC and undisturbed by the parties' agreement), Coral's "use" of its dollars was unremarkable, and certainly not nefarious or impermissible." Case No. 19-03006, AP-ECF No. 579 at 11.

The Trustee notes Coral incorrectly conflates the terms "commingle" and "use" with respect to the collateral in its attempt to distinguish them from "application" of the collateral under N.Y.U.C.C. § 9-207(b)(3). Case No. 19-3006, AP-ECF No. 498, pp. 17-21.

While the UCC permits fungible assets like cash to be commingled (*i.e.,* cash collateral need not be segregated from Coral's other cash unless required by a contract term), a secured party in possession of fungible collateral must still treat the collateral in a manner consistent with the lending agreement. N.Y.U.C.C. § 9-207(b)(4)(C).

In this case, the Secured Term Note only permitted Coral to "use" the Side Collateral for one purpose: "to satisfy any amount due under this Note" in the event of a default. Secured Term Note ¶ 5.3; POC 79-3, p. 102. Therefore, "use" (*i.e.,* spending, applying or using) of the Side Collateral is not the same as "commingling" (*i.e.,* keeping the cash collateral in an unsegregated account with other funds, held and controlled by Coral).

Coral argues N.Y.U.C.C. § 9-207(b)(4) would be rendered superfluous if "use" of the collateral were the same as "application." However, this theory hinges upon Coral's interpretation that "use" means the same thing as "commingling." This interpretation, while novel, is unpersuasive.

Further, under these facts, "use" and "application" indeed have the same meaning. The only language in the Secured Term Note that addressed Coral's "use" of the Side Collateral is in paragraph 5.3, which permitted Coral to "use" the Side Collateral to apply it by satisfying "any amount due under this Note." Secured Term Note ¶ 5.3; POC 79-3, p. 102. In addition, Coral could "set off and apply any and all deposits . . . and other obligations . . . owing by [Coral] . . . against any and all of the obligations of the [Debtors]" without prior demand even if the obligations were contingent or unmatured. Secured Term Note ¶ 5.3, 8.12; POC 79-3, pp. 102, 107.

*The Lowest Intermediate Balance Test*

The Trustee argues that because cash is fungible and the Side Collateral was commingled with Coral's other funds, under the "Lowest Intermediate Balance Test" the Court need only look at the lowest cash balance across Coral's bank accounts during the relevant time periods to determine how much of the Side Collateral was used by Coral. ECF No. 1967, pp. 8-9. The concept is, in essence, the Side Collateral can be considered

the last of the commingled money to leave Coral's accounts, and so, if the value of cash under Coral's direct possession and control ever dipped below $1,400,000, it would constitute a "use" of the Side Collateral.

VFI and J&C argue, by utilizing "tracing" theories, the exact path of the Side Collateral can be followed, and it can be determined that all of the Side Collateral was "used." VFI and J&C therefore conclude testimony from Coral's "preferred member" is irrelevant. In support for this theory J&C cite to no law, and VFI cites to non-binding cases. ECF Nos. 1976 at 8, 1982.

The Second Circuit provided the following illustration of the Lowest Intermediate Balance Test: "If $100 from a drug sale is deposited into an active account, one approach is to consider the account to be 'traceable proceeds' to the extent of $100 as long as the account balance never falls below that sum." *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1159 (2d Cir. 1986). In other words, upon deposit, every dollar was commingled with the rest of the money in Coral's accounts and became indistinguishable from every other dollar. Cash is fungible, and so long as Coral maintained cash under its direct possession and control equivalent to the Side Collateral ($1,400,000 or more) it makes no difference if Coral used one dollar or another to represent the Side Collateral. Thus, there is no need to trace the specific path of the Side Collateral as J&C and VFI requested.

Movants have not offered, and the Court is unable to find, authority to support that it must endeavor to trace the exact path of the Side Collateral under these circumstances. Further, because cash is fungible, it seems there is little need to do so. It is undisputed the Side Collateral was mixed with Coral's other money, losing its identity. Under these circumstances the Court may utilize the Lowest Intermediate Balance Test to determine

when the Side Collateral was "used," as has been done in numerous other federal courts. *See, e.g., In re Connecticut General Life Ins. Co.*, 838 F.2d 612, 619-620 (1st Cir. 1988); *In re Columbia Gas Sys.*, 997 F.2d 1039, 1063 (3d Cir. 1993); *In re Falcon Oil Co.*, 206 B.R. 715, 720 (Bankr. M.D. Pa. 1996); *Old Republic National Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 723 (4th Cir. 1998); *In re MJK Clearing, Inc.*, 371 F.3d 397, 401 (8th Cir. 2004); *United States v. Corey*, Docket No. 3:04CR349 (EBB), 2006 WL 1281824 (D. Conn. May 9, 2006); and *In re Amp'd Mobile, Inc.*, 377 B.R. 478, 489-490 (Bankr. D. Del. 2007).  Under the Lowest Intermediate Balance Test, given the agreed facts here, the Court need only consider the cash Coral possessed and controlled in its bank accounts from December 24, 2018, through the present.[4]

Coral and Movants stipulated that as of December 24, 2018, Coral had direct possession and control of no more than $82,181.42 across its deposit accounts at financial institutions.  ECF Nos. 1967, p. 4; 2019 at 13, 16.  Once Coral's cash balance dipped below the Side Collateral amount ($1,400,000), later received funds cannot be used to "refill" or otherwise replenish the Side Collateral.  *Gen. Motors Acceptance Corp*, 141 Misc. 2d at 355 ("As funds are paid out, they are first paid out of non-proceeds, and then out of proceeds.  As non-proceeds are deposited, they do not replenish any proceeds previously paid out due to insufficiency of non-proceeds funds."); *See also Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir. 1988) (After commingling, if all the money is withdrawn, the trust fund is treated as lost, even though

---

[4] Use of the Lowest Intermediate Balance Test is envisioned under state law as well. *See,* N.Y. U.C.C. Law § 9-315, Comment 3 (subsection (b) permits the use of whatever methods of tracing other law permits with respect to the type of property involved, including among equitable principles the "lowest intermediate balance rule"; *see also, e.g. General Motors Acceptance Corp. v. Norstar Bank*, 141 Misc. 2d 349, 353 (Erie Cnty. Sup. Ct. 1988).

later deposits are made into the account.); *In re Columbia Gas Sys*., 997 F.2d 1039, 1063 (3d Cir. 1993) (Once trust money is removed it cannot be replenished by subsequent deposits. Therefore, the lowest intermediate balance in a commingled account represents the only trust funds that remain.); *Old Republic National Title Ins. Co. v. Tyler* (*In re Dameron*), 155 F.3d 718, 724 (4th Cir. 1998) (In no case is the trust permitted to be replenished by deposits made subsequent to the lowest intermediate balance.); *Texas Comptroller of Public Accounts v. Weathers* (*In re Vaughn Motors, Inc.*), Docket No. 00-50358, 2001 U.S. App. LEXIS 30178, at *8 (5th Cir. Jan. 25, 2001) (applying the Lowest Intermediate Balance Test and refusing to permit replenishment of the account).

## Conclusion

In this case, Coral and Movants agree the lowest intermediate balance of accounts in Coral's name and under Coral's possession and control was $82,181.42, on December 24, 2018. From this the Court can conclude Coral "used" at least $1,317,818.58 of the Side Collateral as of that date and, since those funds could not thereafter be replenished via subsequent deposits from Mr. Freedman or any other source, Mr. Freedman's testimony as to his ability to provide such additional funding to Coral is irrelevant. Therefore, his testimony on this issue will be excluded. For the same reasons, any other evidence Coral intended to present to support the idea that Mr. Freedman or others were available to transfer cash to Coral, if needed, is also irrelevant and will be excluded.

Movants have not agreed to Coral's entitlement to all sums identified on Proof of Claim 79-3. However, there is no dispute with respect to the calculations that support the total amount claimed, assuming entitlement is found. Due to Movants' agreement with respect to "the math" behind Coral's calculation of its proof of claim, and as a result of this

decision, the evidentiary hearing originally scheduled for December 16-18, 2024,[5] (the "Evidentiary Hearing") was not held.

With the Evidentiary Hearing no longer being necessary, several other pending motions relating to the Evidentiary Hearing have become moot. However, the Court has reviewed each related motion and any arguments not specifically addressed in this decision were found to be unpersuasive.

Accordingly, it is hereby:

**ORDERED**: The Motions in Limine (ECF Nos. 1967, 1976, 1977, 1982, 1983) are GRANTED IN PART with respect to any testimony or documentary evidence Coral intended to offer in support of its "cash availability" theory (as detailed in this decision), including but not limited to, testimony by Ryan Freedman. The Motions in Limine are otherwise DENIED AS MOOT. And, it is further,

**ORDERED:**  Coral's Motion to Seal Pursuant to 11 U.S.C. § 107(b) filed as ECF No. 1980 is stayed pending further proceedings; and it is further

**ORDERED:**  Coral's motion seeking permission to file a supplemental exhibit list filed as ECF No. 1979 and its Motion in Limine filed as ECF No. 1981 are DENIED AS MOOT, in light of the preclusion of testimony by Mr. Freedman; and it is further

**ORDERED**: The Trustee's Motion to Modify Protective Order (ECF No. 1941) is DENIED AS MOOT; and it is further,

**ORDERED**: The Trustee's Motion for Protective Order and Sanctions (ECF No. 1978) is DENIED IN PART AS MOOT, with respect to the Trustee's request for a protective order.  To the extent that the hearing was not held, and in light of the Notice of Position Statement of Jefferson and Caldwell (ECF No. 2022) indicating they no longer sought to call Attorney Kornafel as a witness, no protective order is necessary.  However, to the extent that the Trustee intends to pursue sanctions as requested in the motion, the Court will enter a separate scheduling order setting deadlines for the parties to supplement and respond to the motion.

Dated this 27th day of January, 2025, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut

---

[5] ECF Nos. 1939, 1963.